# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

*ELECTRONICALLY FILED*

| | |
|---|---|
| ECAPITAL COMMERCIAL FINANCING CORP. | )<br>)<br>) |
| Plaintiff, | Case No. 21-cv-60152 |
| v. | ) |
| HITACHI CAPITAL AMERICA CORP., | VERIFIED COMPLAINT |
| and | |
| JAMES M. GIAIMO, | |
| Defendants. | |

Plaintiff, eCapital Commercial Financing Corp. ("eCapital"), by counsel and for its Complaint against Defendants, Hitachi Capital America Corp. ("Hitachi") and James M. Giaimo ("Giaimo"), states as follows:

## INTRODUCTION

1. Dissatisfied with the results of an agreement he caused Hitachi to execute, Giaimo has directed Hitachi to engage in unlawful activities to obtain funds to which it is not entitled. In doing so, Giaimo and Hitachi have intentionally interfered with contracts of eCapital, a party with which Hitachi has never had a business relationship. Through this action, eCapital seeks to preserve its business relationships and put an end to Defendants' improper activities.

## PARTIES

2. eCapital is a Florida corporation with its principal place of business at 200 SE 9th Street, Ft. Lauderdale, FL 33316. eCapital is, therefore, a citizen of Florida.

3. Hitachi is a Delaware corporation with its principal place of business at 800 Connecticut Avenue, Norwalk, Connecticut 06854. Hitachi is, therefore, a citizen of Delaware and Connecticut.

4. Giaimo is a citizen of Connecticut.

## JURISDICTION

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendants pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, because Defendants have engaged in tortious conduct causing an injury to eCapital in Florida. Defendants also have sufficient minimum contacts with Florida such that the exercise of personal jurisdiction in this Court satisfies Due Process.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the events and omissions giving rise to this lawsuit occurred in this District.

## FACTS

8. Effective March 31, 2016, Hitachi entered into a Credit Agreement and related financing documents with Trade Finance Solutions Holdings, Inc. ("TFS") and TFS Canada Bond Series, Inc. ("TCBS")  Pursuant to the contracts between those parties, Hitachi extended credit to TFS in connection with TFS's business of factoring accounts receivable for third parties.

9. Factoring is, in general terms, the business of purchasing accounts receivable at a discounted rate, then undertaking the responsibility of collecting those accounts. The factor (*e.g.*, TFS) executes a contract with its customer, through which the factor purchases accounts receivable from its customer, which, in turn, directs its customers to send payments to the factor. Thus, the factor does not collect amounts directly from its own customer, but from its customers' customers.

10. In connection with its business relationship with TFS, Hitachi filed UCC financing statements asserting a lien on TFS's assets. The lien would have attached to accounts receivable obtained by TFS and included in the "borrowing base" on which Hitachi advanced funds to TFS.

11. As TFS collected accounts receivable in the borrowing base, payments would be made to Hitachi. Once collected, accounts receivable were no longer part of the borrowing base, as those accounts ceased to exist. Thus, Hitachi could not possibly continue to have a security interest in a collected account, although it could have a security interest in funds received by GMF in payment of those accounts. New accounts receivable could be added to the borrowing base and, in fact, were added to the borrowing base.

12. In January 2018, TCBS acquired eCapital (then known as Paragon Financial Group Inc.). TFS subsequently changed its name to Global Merchant Finance Inc. ("GMF").

13. In 2019, Hitachi and GMF entered into an agreement winding down the Credit Agreement in advance of the scheduled maturity date and resolving the remaining business disputes between the parties. A copy of the letter agreement between those parties is attached as Exhibit A (the "Letter Agreement").

14. Giaimo negotiated and signed the Letter Agreement on behalf of Hitachi. Since the execution of the Letter Agreement, Giaimo has directed the activities of Hitachi in attempting to obtain payments.

15. Pursuant to the Letter Agreement, Hitachi and GMF agreed to divide the remaining accounts that formed the borrowing base for the loans into performing and non-performing (delinquent) accounts. The Letter Agreement specified payments that would be made to Hitachi in connection with the performing accounts. *See* Letter Agreement, ¶ 2(i).

16. The amounts owed to Hitachi on the remaining, non-performing accounts were to

be paid as the accounts were collected, as stated in paragraph 2(ii) of the Letter Agreement.

17. Paragraph 3 of the Letter Agreement made clear that the "payment requirements contained in the Credit Agreement in respect of the Borrowing Base Certificates shall be replaced by the payment agreements contained in this Letter Agreement and the Credit Agreement is deemed amended accordingly."

18. To fund the payments to Hitachi, GMF sold certain of the performing accounts to eCapital for fair value. GMF transferred those accounts to eCapital before Hitachi signed the Letter Agreement, and Hitachi was aware of the transfer of these accounts. In fact, through a letter dated December 6, 2019 (13 days before the Letter Agreement was signed), Hitachi stated "we understand that the Paragon[/eCapital] transactions financed by HCA (and subject to HCA's security interest) have been refinanced by" a new lender. Hitachi further complained that the proceeds due to it as a result of the refinancing of those accounts had not been paid, and went on to provide the initial terms of what would ultimately be placed in the Letter Agreement. A copy of this letter is attached as Exhibit B.

19. Despite having transferred certain of the accounts that had not been collected, GMF made all payments to Hitachi specified in Paragraph 2(i) of the Letter Agreement that would have been due to Hitachi if GMF had collected the performing accounts itself.

20. GMF has not, however, been able to collect the non-performing accounts.

21. As a result of the inability to collect on the non-performing accounts, Giaimo has directed Hitachi to engage in various actions in an effort to coerce other parties to pay additional funds, including threats to pursue claims against GMF's parent company or other affiliated companies.

22. Although GMF signed a stipulated judgment that Hitachi was permitted to file in

the event of a default under the Letter Agreement, Giaimo and Hitachi have never filed it. Moreover, despite GMF offering to turn over the non-performing accounts to Hitachi so it may attempt to collect them itself, Hitachi has refused to accept the accounts.

23. In January 2021, Giaimo directed counsel for Hitachi to send letters to certain of eCapital's customers in connection with the transferred accounts. (A copy of one such letter is attached as Exhibit C.) Giaimo did not direct Hitachi's counsel to inquire of eCapital whether it had received funds in connection with the transferred accounts, nor did he instruct Hitachi's counsel to institute any legal proceedings against either GMF or eCapital. Instead, Giaimo specifically directed that Hitachi contact eCapital's customers, with which it has existing business relationships, and demand that any further payments due to eCapital under their business relationships be made to Hitachi instead. The payments owed to eCapital by the customers of the letter recipients exceed $75,000.00.

24. Since receiving the transferred accounts, eCapital has collected the funds due under them. Had those accounts remained assets of GMF as part of the borrowing base, their collection would have been reason for GMF to make payments to Hitachi in the event the Letter Agreement had never been signed. By selling the accounts to eCapital and making the payments to Hitachi regardless of whether the accounts were ultimately collected, however, GMF ensured that Hitachi was fully paid for all amounts owed in connection with those accounts. In other words, Hitachi's receipt of the amounts owed to it under the Letter Agreement in connection with the performing accounts was not impacted by the transfer of those accounts to eCapital.

25. Through letters sent to companies with which eCapital has on-going business relationships, Hitachi represents that the amounts currently owed to eCapital are subject to Hitachi's purported security interest. The accounts that were initially assigned by GMF to eCapital

have been collected, however, and new amounts have become due as a result of new and on-going business between eCapital and those third parties. For example, a new account arising from an arrangement directly between eCapital and one of those companies would never have been part of the borrowing base to which Hitachi's lien may arguably have attached. Thus, Hitachi's letters misrepresent that Hitachi has a right to receive payments based on the on-going business relationship between eCapital and its customers.

26. eCapital, through counsel, has requested that Hitachi provide copies of all letters sent to its customers. Hitachi has failed to respond to that request. eCapital was, however, previously provided with a list of 36 companies that may have received such letters, including companies located in Florida.

27. As a result of Hitachi's letters, eCapital anticipates that payments presently due to it will be withheld and that future business opportunities with customers that received Hitachi's letters will be disrupted. The factoring business is extremely competitive, and eCapital's competitors are likely to use Hitachi's letters to attempt to attract eCapital's customers or divert future business from eCapital.

28. Additionally, some of the companies responsible for making payments to eCapital may have already initiated payments to Hitachi in response to the letters. eCapital has no way of determining the extent of the impact of Hitachi's letters at this time.

### COUNT I:
### INTENTIONAL INTERFERENCE WITH
### CONTRACTUAL AND BUSINESS RELATIONSHIPS
### (HITACHI AND GIAIMO)

29. The foregoing allegations are incorporated by reference herein with the same force and effect as if set forth fully below.

30. eCapital received a proper assignment of GMF's rights to the accounts transferred

to it.

31. As a result of the assignment, eCapital obtained valid contracts with each of those third parties. eCapital has, since receiving the assigned accounts, entered into additional business relationships with those companies, and Hitachi has no claim or interest in that business.

32. Hitachi and Giaimo are aware of eCapital's business relationship with each of the third parties to which Hitachi sent letters seeking to divert payments to itself.

33. Defendants intentionally interfered with eCapital's rights under those business relationships, and they have no justification for having done so.

34. Defendants' actions were intended to disrupt the business relationships between eCapital and the recipients of the letters and to cause harm to eCapital in Florida, despite eCapital not having been a party to the agreements between GMF and Hitachi.

35. eCapital has been harmed, and will continue to be harmed, by Defendants' actions. Specifically, Hitachi's letters will, at a minimum, delay payments from at least some of the account debtors. Alternatively, some account debtors may choose to pay in accordance with Hitachi's instructions either out of confusion or concern with potentially being required to pay twice.

36. Additionally, Hitachi's letters allege defaults by GMF, an affiliate of eCapital, which may cause companies with which eCapital engages in business to question the financial stability of eCapital. The letters are damaging to eCapital's reputation and are likely to interfere with future, prospective business relationships.

### COUNT II:
### CONVERSION
### (HITACHI)

37. The foregoing allegations are incorporated by reference herein with the same force and effect as if set forth fully below.

38. By sending the letters referenced above, Hitachi wrongfully asserted an act of

dominion over funds eCapital is rightfully entitled to recover.

39. Hitachi has no ownership interest in the funds over which it has asserted dominion, as it was fully paid in connection with accounts that may have previously been subject to its lien. Additionally, the funds owed to eCapital by the recipients of the letters are due in connection with new accounts that were not, and could never have been, subject to Hitachi's lien.

40. Through its actions, Hitachi has committed conversion of eCapital's property.

41. To the extent any funds are received by Hitachi in response to its letters, eCapital is entitled to a judgment against Hitachi for any such amounts.

## COUNT III:
## RESTRAINING ORDER; PRELIMINARY AND PERMANENT INJUNCTION
## (HITACHI AND GIAIMO)

42. The foregoing allegations are incorporated by reference herein with the same force and effect as if set forth fully below.

43. eCapital has a clear legal right in its contracts and business relationships with the third parties that received letters from Hitachi.

44. eCapital does not have an adequate remedy at law to address Defendants' interference with its contracts and business relationships.

45. eCapital will suffer irreparable injury in the absence of an injunction requiring Hitachi to rescind each of the letters it sent. In fact, irreparably injury is presumed in cases such as this involving intentional interference with contracts and business relationships.

46. The Court should enter a restraining order, followed by a preliminary and permanent injunction requiring Hitachi to rescind each of the letters it sent and prohibiting Defendants from sending any additional letters making claims to amounts due to eCapital.

WHEREFORE, eCapital demands the following relief:

1. Compensatory damages for Hitachi's interference with eCapital's contractual and

business relations;

2.  A restraining order, followed by a preliminary and permanent injunction requiring Hitachi to rescind all of the letters sent to parties with which eCapital does business, and prohibiting Defendants from sending similar communications in the future;

3.  Punitive damages for Defendants' intentional and unjustified interference with eCapital's contractual and business relationships, and their assertion of rights that do not exist;

4.  Its attorney's fees and costs;

5.  Pre- and post-judgment interest; and

6.  Any and all other relief to which it may be entitled.

Respectfully submitted,

DICKINSON WRIGHT PLLC


*/s/ Christopher D. Cathey*
Christopher D. Cathey
Florida Bar No. 0663255
350 East Las Olas Blvd., Suite 1750
Fort Lauderdale, FL 33301
Tel.: (954) 991-5420
Fax: (844) 670-6009
E-mail: ccathey@dickinsonwright.com
Counsel for Plaintiff

Of Counsel for Plaintiff:

Brian M. Johnson
Dickinson Wright PLLC
300 West Vine Street, Suite 1700
Lexington, KY 40507
Tel.: (859) 899-8704
Fax: (844) 670-6009
bjohnson@dickinsonwright.com

## **VERIFICATION**

I declare that the above statements are true to the best of my knowledge, information and belief, under penalty of perjury.

By: _____
Cris Neely, Chief Financial Officer,
eCapital Commercial Financing Corp.

4810-9879-8040 v3 [78467-1]